Gen. 393]                                                    393

**REAL ESTATE BROKERS**

SCOPE OF LICENSING EXEMPTION FOR PROPERTY MANAGERS

January 24, 1994

*The Honorable Brian E. Frosh*
*House of Delegates*

You have requested our opinion concerning the scope of §16-301(b)(4) of the Business Occupations and Professions ("BOP") Article, Maryland Code, which exempts certain property managers from the licensing requirement of the Maryland Real Estate Brokers Act.

In a 1979 unpublished opinion, this office construed the exemption somewhat broadly, so that a property manager would not need to obtain a license even if the manager's principal activity as agent on behalf of a property owner was leasing apartments and collecting rent for that property − activities that would ordinarily require a license. Constituents of yours have suggested that the better reading of the exemption is a narrower one, under which a property manager would not be entitled to claim the exemption if the individual's activities predominantly involve leasing and rent collection.

If we were writing on a clean slate, we might be inclined to the view of the exemption urged by your constituents. We are not, however. Under our office's policy, "[w]e do not overrule a prior opinion simply because we might have resolved a close question the other way, were we first presented with it." 72 *Opinions of the Attorney General* 200, 202 (1987). Rather, we overrule a prior opinion only if the opinion is manifestly incorrect or has been overtaken by changed circumstances.

Neither is the case here. The conclusion in the 1979 opinion reflects a reasonable construction of the law at the time. Moreover, changes in the law since 1979 have not eroded the conclusion reached in the 1979 opinion; indeed, the changes reflect legislative acceptance of it. Hence, if property managers who predominantly engage in extensive leasing and rent collection activities are to be

subject to licensing requirements, the General Assembly will need to achieve that result through a change in the law.

# I

## Background

This question arises because of the activity of an individual who was formerly a licensed real estate broker. As a result of the individual's deceptive practices and other violations of law, her license was revoked. According to your constituents, however, the former licensee continues "to list, show, rent and manage a large number of units" at several condominium buildings in Montgomery County. The former licensee asserts that these activities, carried out by her as agent for owners of the condominium units, are legally permissible without a license.

BOP §16-301 generally requires an individual to obtain a license prior to providing "real estate brokerage services" in Maryland.[1] The definition of "provide real estate brokerage services" includes "for consideration, ... leasing any real estate ... or collecting rent for the use of any real estate; ... for consideration, assisting another person to locate or obtain for purchase or lease any residential real estate; [or] engage in regularly in a business of dealing in real estate or leases or options on real estate." BOP §16-101(k)(1), (2), and (3).

Thus, someone who lists, shows, and rents property is engaged in "provid[ing] real estate brokerage services" and would ordinarily be required to be licensed. However, BOP §16-301(b)(4) exempts "an agent of ... an owner of real estate" from the licensing requirement "while managing or leasing that real estate for the ... owner."[2]

---

[1] A person who provides real estate brokerage services without a license is guilty of a misdemeanor, unless an exception in the law permits the activities. BOP §§16-601 and 16-613.

[2] The exact text is as follows: "A license is not required for ... an agent of a licensed real estate broker or of an owner of real estate while

(continued...)

## II

## History of the Exemption

### *A.    Introduction*

The owner of a residential or commercial building in which space is to be rented out, or a real estate broker on behalf of the owner, will often hire a manager for the property.  Traditionally, a property manager is responsible for leasing space, collecting rent, and a host of other activities related to the day-to-day functioning of the property.

In *Weil v. Lambert*, 183 Md. 233, 37 A.2d 312 (1944), the Court of Appeals made clear that, under the real estate broker's licensing law then in effect, the licensing requirement did not apply to such a traditional property manager:

> [The licensing provision] would not apply to the alleged work done by the plaintiff .... The collection of rent was only one of the many services alleged to have been performed. The other work included responsibility for the building, acting as caretaker and looking after the general upkeep and repair and renting the offices, stores, and apartments.  This employment of the plaintiff to collect rents from this one building with no intention of engaging in any other transactions with respect to any form of realty or interest therein is not carrying on the business of a real estate broker.

183 Md. at 245.

---

² (...continued)
managing or leasing that real estate for the real estate broker or owner."

### B.    1979 Enactment

In 1979, the General Assembly found it necessary to enact a statutory exemption for property managers. Chapter 433 (Senate Bill 177) of the Laws of Maryland 1979. The legislative history indicates that the issue came to the Legislature's attention when the State's Attorney for Montgomery County indicated his view that resident managers of apartment buildings who signed leases as agents of the property owner, or of a real estate broker acting on behalf of the owner, would be subject to criminal prosecution if they did not obtain licenses. Letter from Gary L. Crawford, Major Frauds Unit, to Evelyn M. Valentine, Resident Manager of Parkside Plaza Apartments (September 27, 1978).

When Senate Bill 177 was introduced, the proposed exemption was phrased in terms of "resident managers of apartment buildings." The bill was supported by large property owners and realty companies and opposed by the Department of Licensing and Regulation and the Real Estate Commission.

Both supporters and opponents seemed to have had in mind the traditional resident manager, who performs a variety of tasks beyond the leasing of apartments and the collection of rent. For example, one letter from a property management company stated that each of its resident managers had "total on-site responsibility for her apartment community":

> She is responsible for the supervision of the rental staff; supervision of the janitorial staff; renting of apartments; collecting of delinquent rents; prompt attention to the maintenance requests of residents; operation of the swimming pool; grounds keeping and snow removal; and, most important of all, tenant relations.... It is the continuing responsibility of operating an apartment community that is the major occupation of the Resident Manager.

Letter from Gladys C. Leming, Property Manager for Kettler Brothers, Inc. to Delegate Frederick C. Rummage (March 2, 1979). The Department of Licensing and Regulation, in opposing the exemption, stated that "[t]he duties normally performed by resident managers of apartment buildings fall within the definition of ['real

estate broker'], thus requiring licensure." Department Position Paper at 1 (January 30, 1979).[3] Nothing in the legislative file suggests any focus on, or legislative decision-making about, a property manager whose duties would consist primarily or exclusively of renting space and collecting rents.

Senate Bill 177, after a few committee amendments, was enacted as Chapter 433 of the Laws of Maryland in 1979 and codified in former Article 56, §212(f)(9) of the Maryland Code. As amended, the exemption applied to "[d]esignated agents of owners or licensed real estate brokers in the management of ... property unless the designated agent's principal and regular business is that of purchasing, selling, exchanging, or trading in real estate and real estate options."

### C.   1979 Opinion

In Opinion No. 79-063 (November 19, 1979) (unpublished), Attorney General Sachs was asked to interpret the scope of the new exemption. There were two key points in the Attorney General's analysis.

First, the Attorney General reasoned that the exemption would have been essentially meaningless had it not encompassed various activities that would otherwise require licensure. Although the Attorney General concluded that the term "management," the key term in the exemption, did not encompass the sale of property, the term "was intended at least to cover traditional management functions such as negotiating leases and collecting rents." Opinion No. 79-063, at 3 n.3.

Second, the Attorney General concluded that the exemption applied even if the property manager's "principal and regular business" involved leasing property and collecting rents. Although the Attorney General recognized that the exemption did not apply if "the designated agent's principal and regular business is that of ... trading in real estate," the Attorney General construed the term "trading in real estate" as referring only to "activities beyond the scope of traditional management functions." Opinion No. 79-063,

---

[3] The Department did not explain how this view squared with that of the Court of Appeals in *Weil v. Lambert*.

at 4. "Traditional management functions," in the Attorney General's view, included negotiating and making leases and collecting rents:

> If "trading" were to be given a broad reading so that management would be included within the term, it would mean that this exemption applies only to those who manage leased property as a sideline or adjunct to their usual work. We do not believe that the General Assembly intended to exempt a person's management activities only if these very activities are not that person's principal and regular business.

*Id*. As the Attorney General put it, "the very activity permitted by §212(f)(9) − 'management' − would itself appear to have been intended by the General Assembly to permit such traditional management functions as negotiating leases and collecting rents." *Id*.

### D. 1988 Revision

In 1988 the General Assembly enacted a substantive revision of the Real Estate Brokers Act. Chapter 563 (Senate Bill 201) of the Laws of Maryland 1988. A joint subcommittee, comprising members of the jurisdictional Senate and House committees, undertook a comprehensive review of the law. "The scope of the review was not to be limited to a nonsubstantive revision and, indeed, the Joint Subcommittee was requested to consider substantive proposals." General Subcommittee Comment, *reprinted in* 1988 Supplement to former Article 56A, at 261.

The Joint Subcommittee decided to retain the exemption for property managers as it appeared in the first clause of former Article 56, §212(f)(9) "without substantive change." Subcommittee Comment at 174. Thus, the exemption as enacted by Chapter 563 and codified at former Article 56A, §4-301(b)(4) extended to "an agent of a licensed real estate broker or of an owner of real estate while managing or leasing that real estate for the real estate broker or owner." The Joint Subcommittee decided *not* to enact the exclusion from the exemption that had appeared in the second clause of §212(f)(9):

> The second clause of former Art. 56, §212(f)(9), which excluded agents whose "principal and regular business is that of purchasing, selling, exchanging, or trading in real estate and real estate options" is deleted to eliminate the possibility that the exception in subsection (b)(4) of this section could be interpreted as including the activities listed in that phrase.

Subcommittee Comment at 174. There is no suggestion of any disagreement with the Attorney General's view that negotiating leases and collecting rents by a property manager were not "trading in real estate." Nor, more importantly, did the Joint Subcommittee indicate any disagreement with the Attorney General's view that negotiating leases and collecting rents *are* encompassed by the term "managing ... real estate." In fact, since the exemption in §212(f)(9) spoke simply of "the management of ... property," and since the newly phrased exemption spoke of "managing *or leasing* ... real estate," the Joint Committee must have agreed with the Attorney General's interpretation. Otherwise, the inclusion of the new term "leasing" would have been a substantive change. But, as to this aspect of the recodification, the new language was derived "without substantive change."

In short, the 1988 recodification reflects legislative acceptance of the construction placed on the exemption by the Attorney General. Neither the Attorney General's interpretation nor the recodified exemption reflects the view that if leasing and rent collection activities predominate, the exemption is not applicable.

### E.    1989 Recodification

The final legislative action concerning the exemption occurred in 1989, with the enactment of the Business Occupations and Professions Article. The exemption that is set out in BOP §16-301(b)(4) is identical to the version in the 1988 revision and recodification.

### III

### Analysis

While the conclusion in the 1979 opinion is not unreasonable, it is also not self-evidently correct. To be sure, management functions do include the leasing of vacant properties and the collecting of rents, but the original language of the exemption, limiting its scope to those who did not engage in the "principal and regular business ... of ... trading in real estate," suggests that the Legislature might have not intended the exemption to apply to someone who engages in few, if any, of the day-to-day operational activities of a property manager but instead focuses exclusively on negotiating leases and collecting rent. Further, the materials before the General Assembly when it enacted the exemption referred to traditional property managers, for whom leasing and rent collection are but two of a host of activities.

As a policy matter, moreover, the protective purposes of the licensing law might well be better served if the exemption were narrower. *See Smirlock v. Potomac Development Corp.*, 235 Md. 195, 200 A.2d 922 (1964). Someone who spends most of his or her time leasing residential property should be held to the same standards of honesty and fair dealing that apply to licensees.

The fact remains, nevertheless, that Attorney General Sachs reached the conclusion that he did soon after the enactment of the exemption in 1979. The General Assembly is presumed to have had knowledge of this interpretation. *See, e.g., State v. Crescent Cities Jaycees*, 330 Md. 460, 470, 624 A.2d 955 (1993). When the General Assembly reenacted the exemption in 1988, it effectively ratified the Attorney General's conclusion that a property manager's leasing of apartments and collecting of rent for their owner are within the exemption, whatever proportion of the manager's total duties they represent.[4]

---

[4] When the General Assembly wished to impose a proportionality limit on an exemption, it did so expressly. *See* BOP §16-301(b)(2) (lawyer who "is not regularly engaged in the business of providing real estate brokerage services" and does not hold out to be a broker is exempt).

## IV

## Conclusion

In summary, we decline to overrule Opinion No. 79-063 and thereby to upset the long-standing interpretation of the exemption in BOP §16-301(b)(4) that the General Assembly itself has seen fit to leave undisturbed.  If a licensing requirement is to be imposed on property managers whose primary job is to lease apartments and collect rents, the General Assembly should impose it.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions and Advice*